IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LARRY JOHNSON, § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. H-07-2544 |
| § | |
| MICHAEL ASTRUE, § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this appeal from a denial of Social Security disability benefits are Plaintiff's Motion for Summary Judgment (Docket Entry No. 9) and Defendant's Motion for Summary Judgment (Docket Entry No. 7). The Court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the Court **GRANTS** Defendant's motion, **DENIES** Plaintiff's motion, and **AFFIRMS** the decision of the administrative law judge.

### I.  CASE BACKGROUND

#### A.    **Procedural Background**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding his claims for disability benefits under Title II of the Social Security Act ("the Act").

Plaintiff filed his applications for disability benefits on January 3, 2003, claiming that he became disabled due to hepatis C, post-traumatic stress disorder ("PTSD"), and substance addiction disorder on November 1, 1997. Tr. 53. At a hearing held in Houston, Texas, on December 5, 2005, the administrative law judge ("ALJ") heard testimony from Plaintiff, his friend, and a vocational expert ("VE"). In his decision issued on March 31, 2006, the ALJ found that Plaintiff was not disabled at any time prior to December 31, 2001, the expiration date of Plaintiff's insured status. Tr. 25.

The Appeals Council denied Plaintiff's request for review. Accordingly, the ALJ's decision became the Commissioner's final decision for purposes of this Court's review.

**B.   Factual Background**

At the ALJ hearing held December 5, 2005, Plaintiff testified that he was born on September 15, 1950. He did not graduate high school, having dropped out during the tenth grade, and did not obtain a GED. Tr. 29. He served in the military from 1969 to 1970, with a one-year tour of duty in Vietnam. Tr. 30. He completed a twelve-week course in air conditioning repair in 1976, and from 1970 to 1990, worked in apartment maintenance and general repair. Tr. 30-31. He stopped working on a full-time basis in 1997. Tr. 32.

He had several, short-term jobs during 1990 through 1997, with limited employment due to his anger, depression, and inability to cooperate with other people. Tr. 34-35. He did not return to work after 1997 because of insomnia, depression, and his inability to work with others. Tr. 35. He was afraid to go to doctors, and did not seek help until December of 2000.

During 1997 to 2001, he was very depressed, could not keep a job or a girlfriend, and depended on friends for help. Tr. 36. He was irritable, angry, unable to concentrate or sleep, and had nightmares. Tr. 37. He had thoughts of hurting himself, but did not follow through. Tr. 38.

He began treatment with the Veterans Administration Medical Center ("VAMC") in 2001 and was still in treatment as of the hearing. *Id.* He received medical care, social help, stress and anger management classes, and counseling through the VAMC. His medications helped, but did not stop, all of his mental health problems. Tr. 39. In December of 2001, he was diagnosed with PTSD with depressive symptoms. His support person is James Pierce, who has been his friend for over twenty years.

James Pierce testified at the hearing that he, too, was a Vietnam military veteran, and that he and Plaintiff would "talk things out" with one another. Tr. 41. During the 1990s, particularly around 1997, Plaintiff became very short-tempered with people at work, and was either fired from, or quit, most of his jobs. Pierce would help him out or take him in until he found new work. Controversy or disagreements caused Plaintiff to lose his temper, which he did at least once weekly. Tr. 43. Plaintiff's condition worsened over time, until he finally "pretty much cratered" around 1997. Tr. 44. Pierce testified that, during the time period between 1997 to 2001, Plaintiff could not have functioned in a work environment. Tr. 45. Plaintiff had a substance abuse problem with alcohol and marijuana, but stopped drinking following his hepatitis C diagnosis. *Id.*

3

Thomas King, a VE, testified that Plaintiff worked primarily as a building maintenance mechanic, which is medium exertional level skilled work. Tr. 47. Assuming a hypothetical person of Plaintiff's age, education, and work experience, with the physical ability to perform light work but with mental restrictions of low stress, unskilled work with limited public contact, and a "moderate" inability to carry out detailed work or interact with the public, supervisors, and co-workers, King testified that Plaintiff would not be able to do his past work. Tr. 47-48. He would have no transferrable skills under the hypothetical. Tr. 48. King testified that examples of light, unskilled work would include mail clerk, small products assembler, or garment sorter. King provided figures for a number of regional and national jobs for each occupation. Under a modified hypothetical of "marked" inability to interact with the public, supervisors, and co-workers, the person would not be able to perform past relevant work or any work. Tr. 49. If the first hypothetical were modified to reflect a 25% reduction in the person's productivity due to mental and/or physical impairments, the person would have difficulty maintaining work. Tr. 50.

C.   **ALJ's Evaluation and Findings**

*Evaluation of the Evidence*

In his evaluation of the evidence, the ALJ noted that Plaintiff was a 51 year old man with a tenth grade education and past relevant work as a maintenance worker and handyman. Plaintiff had the medically determinable severe impairments of hepatis C, PTSD, and substance addiction disorder. Plaintiff's insured status expired on December 31, 2001.

4

The ALJ evaluated Plaintiff's physical history and status. He noted that, in September of 2002, Plaintiff sought follow-up treatment for hepatitis C symptoms, and that a liver biopsy in March of 2003 confirmed chronic hepatitis C. Disregarding orders from his physicians, Plaintiff continued to consume alcohol. He was successfully treated with antivirals from August through December of 2004, and at follow-up examinations in early 2005, Plaintiff reported a decrease in symptoms and that he was able to walk several miles without experiencing chest pain. Tr. 19. Blood work taken in March of 2005 revealed normal values for all tests. In late 2005, Plaintiff informed VAMC that he was able to work two days a week doing odd jobs. The ALJ noted that Plaintiff's medical records did not reflect any history of cardiac or renal damage secondary to hepatitis C or any physical findings of end stage organ damage. *Id.*

The ALJ then evaluated Plaintiff's mental conditions and status. He noted that, in August[1] of 2000, Plaintiff complained to VAMC physicians of PTSD with symptoms of sleep disturbance, suicide thoughts, auditory hallucinations, anxiety, irritability, feelings of hopelessness, and recurrent recollections of his tour of duty in Vietnam. He reported no prior psychiatric treatment. He also admitted to a history of alcohol and drug abuse, and that he continued to consume beer and marijuana on a daily basis. He was diagnosed with PTSD with related depression, and alcohol and marijuana abuse. The VAMC instructed him to

---

[1] The records reflect the actual date of this visit as December 18, 2000. Tr. 395.

cease using alcohol and marijuana, and recommended further psychiatric evaluation. Plaintiff, however, continued his abuse of both substances. Tr. 20.

A subsequent VAMC mental examination in April of 2002 noted that Plaintiff appeared well-dressed and groomed, cooperative, alert and oriented. His thought process was coherent and goal directed. He was negative for any auditory or visual hallucinations or suicidal thoughts. His memory for recent and remote events was grossly intact. Diagnoses of PTSD, major depression, and substance abuse were confirmed. *Id.* In June of 2003, Plaintiff reported continued improvement, with only occasional depressive moods. His PTSD and major depression were reported as "in remission." Plaintiff continued to use marijuana on a weekly basis. Treatment and progress notes from December of 2003 through July of 2005 continued to report Plaintiff's prior diagnoses as "in sustained remission." *Id.* Follow-up examinations in October of 2005 indicated that Plaintiff continued to do well.

The ALJ stated that, with respect to Plaintiff's functional limitations resulting from his mental condition, he had a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Plaintiff experienced no repeated episodes of deterioration or decompensation.

The ALJ concluded that, prior to December 31, 2001, none of Plaintiff's impairments, singly or in combination, met or equaled the criteria for a listing impairment under 20 C.F.R. 404, Subpart P, Appendix 1, §§ 5.05, 12.04, 12.06, or 12.09. Tr. 21. Plaintiff retains the

6

RFC to perform a full range of light work, with limited public contact and low stress unskilled tasks due to depression.

The ALJ stated that Plaintiff testified that he was unable to engage in any sustained work activity due to depression with associated symptoms of sleep disturbance, nightmares, concentration problems, irritability, angry outbursts, suicidal thoughts, and an inability to get along with people. *Id.* Plaintiff reported that he developed PTSD as a result of his military duty in Vietnam and that, commencing in 2001, he sought psychiatric treatment from the VAMC, including counseling and classes in stress and anger management. The ALJ noted that Plaintiff's friend, James Pierce, generally corroborated Plaintiff's testimony. *Id.*

The ALJ further noted that, in his application materials, Plaintiff reported being able to perform household chores such as cleaning, grocery shopping, and yard work. He continued to drive a car, walk, and ride a bicycle, and attended to his own personal care. *Id.* The ALJ referenced several inconsistencies between Plaintiff's testimony and his written claim, such as Plaintiff's claim that hepatitis C rendered him unable to work, despite his normal liver function and enzyme tests in 2004. Tr. 22. Moreover, VAMC records reflected Plaintiff's reports that he was doing well following hepatitis antiviral treatment in 2005. As a second significant inconsistency, the ALJ noted that Plaintiff professed an inability to work due to depression and PTSD, whereas his VAMC mental health records diagnosed these conditions as in sustained remission through the date of the administrative hearing in December of 2005. *Id.* Further, Plaintiff's activities were consistent with an ability to

perform light work, including his statements that he continued to perform handyman-type jobs in 2005, and none of his treating or examining physicians were of the opinion that he was disabled by any of his impairments or unable to work. The ALJ concluded that Plaintiff's testimony was not wholly credible or supported by the evidence as a whole insofar as Plaintiff asserted an inability to perform all work activities, including those at a "light" level, nor were the objective clinical findings consistent with an individual experiencing totally debilitating pain. Tr. 23.

Based on the VE's testimony and the record as a whole, Plaintiff was found unable to perform past relevant work as a building maintenance mechanic and handyman. *Id.* Plaintiff had, however, a RFC to perform work at the light level of exertion, with limited public contact and low stress unskilled tasks due to depression. The VE testified that, given these factors, Plaintiff could perform such light unskilled jobs as mail clerk, small products assembler, and garment sorter, jobs which existed in significant numbers in the national economy. *Id.* The ALJ determined that Plaintiff was not disabled at any time prior to December 31, 2001, the date on which he was last insured, and denied his claim. Tr. 24.

*Findings*

The ALJ found that Plaintiff was insured for disability benefits through December 31, 2001, and that he was not engaged in substantial gainful activity since December 31, 1997. Tr. 24. He further found that Plaintiff's hepatitis C, PTSD, and substance addiction disorder constituted "severe" impairments, but that the impairments did not meet or medically equal

a listed impairment. *Id.* The ALJ was of the opinion that Plaintiff's allegations regarding his limitations were not totally credible.

The ALJ determined that Plaintiff had a RFC to perform a light level of work, with limited public contact and low stress unskilled tasks due to depression. *Id.* He found that Plaintiff was unable to perform any past relevant work, that he had a limited tenth grade education, and was closely approaching advanced age. *Id.* Plaintiff had no transferrable skills, but jobs Plaintiff was able to perform existed in significant numbers in the national economy. Tr. 25. The ALJ concluded that Plaintiff was not disabled and not entitled to disability benefits. *Id.*

## II. STANDARD OF REVIEW AND APPLICABLE LAW

A motion for summary judgment under Federal Rules of Civil Procedure Rule 56 requires the Court to determine whether the moving party is entitled to summary judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). A genuine issue of material fact exists if a reasonable fact finder could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views the evidence

in the light most favorable to the non-moving party, and draws all reasonable inferences in favor of that party. *Id.*

Judicial review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether substantial evidence in the record supports the decision and whether the ALJ applied proper legal standards in evaluating the evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). If the Commissioner's decision satisfies both of these requirements, it must be affirmed. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

### A. "Substantial Evidence"

The widely-accepted definition of substantial evidence is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "something more than a scintilla but less than a preponderance." *Id.* The Commissioner has the responsibility of deciding any conflict in the evidence. *Id.* If the findings of fact contained in the Commissioner's decision are supported by substantial evidence appearing in the record, they are conclusive, and this Court must affirm. 42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision, should the Court overturn it. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the Court is to review the entire record, but may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that

of the Commissioner. *See Brown*, 192 F.3d at 496. In other words, the Court is to defer to the Commissioner's decision as much as possible without making its review meaningless.

**B.     Legal Standard**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving that he is disabled within the meaning of the Act. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423 (d)(3). A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured. *Ivy v. Sullivan*, 898 F.2d 1045, 1948 (5th Cir. 1990).

To determine whether a claimant is capable of performing any substantial gainful activity, the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

(1)     a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2)     a claimant will not be found to be disabled unless he has a 'severe impairment';

11

(3)  a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;

(4)  a claimant who is capable of performing work that he has done in the past must be found 'not disabled'; and

(5)  if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears the burden of proof on the fifth step. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999); *Brown*, 192 F.3d at 498. The Commissioner can satisfy his burden either by reliance on the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner satisfies his burden of proof as to the fifth step, then the burden shifts back to the claimant to prove he cannot perform the work suggested. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. *Greenspan*, 38 F.3d at 236.

### III. ANALYSIS

In his motion for summary judgment, Plaintiff claims that the ALJ erred in his analysis of Plaintiff's RFC and that substantial evidence supports Plaintiff's RFC as less-than-

sedentary. As a conditional argument, Plaintiff requests the Court to find him disabled with a sedentary RFC. (Docket Entry No. 9, p. 1.)

A.     **Evaluation of RFC**

In support of his first ground for summary judgment, Plaintiff contends that the ALJ erred as a matter of law by incorrectly analyzing his RFC at steps three and four. Under steps three and four,

> (3)    a claimant whose impairment meets or is equivalent to a listed impairment will be considered disabled without the need to consider vocational factors; and
>
> (4)    a claimant who is capable of performing work that he has done in the past must be found 'not disabled.'

See *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). Plaintiff bears the burden of proof on steps three and four. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999).

Plaintiff argues that in order to properly determine RFC under step three, the ALJ was required to comply with 20 C.F.R. § 404.1503(e), "Initial Determinations for Mental Impairments," which, at the time of the instant hearing, provided as follows:

> An initial determination by a State agency or the Social Security Administration that you are not disabled (or a Social Security Administration review of a State agency's initial determination), in any case where there is evidence which indicates the existence of a mental impairment, will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment. (See § 404.1616 for the qualifications we consider necessary for a psychologist to be a psychological consultant and § 404.1617 for what we consider reasonable effort.) If the services of qualified psychiatrists or psychologists cannot be obtained because of impediments at the State level, the Commissioner may

> contract directly for the services. In a case where there is evidence of mental and non-mental impairments and a qualified psychologist serves as a psychological consultant, the psychologist will evaluate only the mental impairment, and a physician will evaluate the non-mental impairment.

According to Plaintiff, this regulation obligated the ALJ to obtain the services of a psychological or psychiatric consultant prior to evaluating Plaintiff's RFC due to the numerous medical records reflecting Plaintiff's psychological impairments. Because the ALJ failed to procure such testimony either at the hearing or refer Plaintiff to a consultative mental health examination prior to the hearing, argues Plaintiff, he erred as a matter of law.

A review of the record reveals that the requirements of 20 C.F.R. § 404.1503(e) were met. Section 1503(e) applies to initial determinations by a State agency or the Social Security Administration, or to a Social Security Administration review of a State agency's initial determination, where there is evidence of a mental impairment. In such an instance, "every reasonable effort" must be made to have a qualified psychiatrist or psychologist complete the medical portion of the case review and any applicable residual functional capacity assessment. The record before this Court shows that, in filing his initial claim, Plaintiff reported suffering from PTSD since 1997, but that, because he had not seen a doctor prior to December, 2000, there were no relevant medical records prior to that time. Tr. 129. He stated that his PTSD and other medical complaints were treated at the VAMC commencing in January of 2001. Because Plaintiff had not sought medical treatment for his purported PTSD disability prior to December 2000, the State agencies and SSA reviewed

all of the available medical evidence regarding Plaintiff's December 31, 2001, disability status and medical condition.

In denying his claim, the Social Security Administration (SSA) informed Plaintiff in its Explanation of Determination letter of February 24, 2003, that,

> You said you were disabled because of post traumatic stress disorder. The evidence we now have is not sufficient to show that your condition was disabling prior to 12/31/01 when your period of coverage ended. If you can provide additional evidence to support your claim, write, call, or visit any Social Security Office.

Tr. 58. The letter stated that the determination was made by an agency of the State based on SSA rules and regulations, and that Plaintiff's VAMC records received on February 3, 2003, were reviewed by "doctors and other people in the State Agency who are trained in disability evaluation[.]" *Id.* The disability determination form was signed by a State agency physician, Leela C. Reddy, M.D. Tr. 53. The parties do not dispute that Dr. Reddy was a psychiatrist. In her Psychiatric Review Technique Form dated February 21, 2003, Dr. Reddy reported that her review of the medical evidence found the evidence insufficient to determine a medical impairment. Tr. 399. Accordingly, the record shows that the requirements of section 1503(e) were met in that "a qualified psychiatrist or psychologist . . . completed the medical portion of the case review and any applicable residual functional capacity assessment," and that Plaintiff's medical evidence was insufficient to show that he was mentally or physically disabled prior to December 31, 2001.

Accordingly, Plaintiff fails to show that he is entitled to summary judgment under this first ground.

**B.     Finding of RFC**

In his second ground for summary judgment, Plaintiff argues that the ALJ "entirely dismissed" Plaintiff's depression in evaluating Plaintiff's RFC. (Docket Entry No. 9, pp.7-8.) Plaintiff's argument ignores the ALJ's finding that Plaintiff had a RFC to perform a light level of work, "limited to public contact and low stress unskilled tasks *due to depression.*" Tr. 24 (emphasis added). Thus, the ALJ's finding evinces his consideration, evaluation, and inclusion of Plaintiff's depression in determining Plaintiff's RFC, and refutes the factual basis for Plaintiff's argument.

Plaintiff further complains that the ALJ erred as a matter of law in finding "not totally credible" Plaintiff's allegations regarding his limitations. "While an ALJ must consider an applicant's subjective complaints of [symptoms], he is permitted to examine objective medical evidence in testing the applicant's credibility. He may find, from the medical evidence, that an applicant's complaints of [symptoms] are not to be credited or are exaggerated." *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985); *see also Zimmerman v. Astrue*, No. 20766, at *7-8 (5th Cir. 2008) (unpublished).

In noting Plaintiff's complaints regarding sleep disturbances, nightmares, anger outbursts, irritability, inability to get along with people, and other symptoms, the ALJ also noted Plaintiff's ability to perform household chores such as cleaning, grocery shopping, and

16

yard work; his continued ability to drive a car; his ability to take care of his personal care; and his recreational enjoyment of walking and riding a bicycle. The ALJ referenced Plaintiff's own testimony that he continued to work two days a week doing handyman "odd jobs," earning between $500.00 and $600.00 per month, and that, as of 2003, his depression, PTSD, and substance abuse were in sustained remission. Tr. 22. Plaintiff reported he was able to walk several miles. The ALJ was of the opinion that these factors contradicted Plaintiff's claim of being unable to work or to perform sustained work. *Id.* Nor does the record contain any testimony or evidence that Plaintiff was unable to meet the exertional requirements of light level work (*i.e.*, lift or carry no more than twenty pounds occasionally and ten pounds frequently; stand or walk six hours of an eight hour work day; sit at least two hours of an eight hour work day).

As to mental limitations, the ALJ stated that, "although [Plaintiff] may be affected by some mild to moderate emotional disorder at times, which may become aggravated by certain types of activities, [he] is still able to perform work-related activities at the light level." Tr. 23. The ALJ incorporated Plaintiff's mental limitations into the RFC by restricting his work to low stress, unskilled jobs with limited public contact. Tr. 23, 47.

This Court is not at liberty to re-weigh the evidence or overrule the ALJ's decision as to credibility. Finding that the ALJ's evaluation of Plaintiff's subjective limitations was supported by substantial evidence in the record, the Court must defer to the ALJ's assessment. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The ALJ's finding

that Plaintiff had a RFC for light work, with limited public contact in low stress, unskilled tasks due to depression, is supported by substantial evidence in the record. Accordingly, Plaintiff's conditional third ground for summary judgment need not be addressed.

The Court finds that the ALJ's findings and determinations are supported by substantial evidence, and that Plaintiff is not entitled to summary judgment. For these same reasons, Defendant is entitled to summary judgment affirming the ALJ's decision as a matter of law.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment (Docket Entry No. 7), **DENIES** Plaintiff's motion for summary judgment (Docket Entry No. 9), and **AFFIRMS** the decision of the administrative law judge.

The Clerk will provide copies to the parties.

Signed at Houston, Texas, on this the 30 day of March, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE